GEORGE S. NICHOLAS, Respondent, *v.* FRANKLIN B. LORD, as Trustee under a Deed of Trust Made by AUGUST P. PURDY, et al., Appellants, Impleaded with Another.

1. JUDGMENT — EFFECT OF. A judgment obtained without fraud or collusion is conclusive evidence, in suits between creditors in relation to the property of the debtor, of the indebtedness of the latter and of the amount of such indebtedness. There is no difference in the effect of a judgment whether it is sought to be enforced against the general property of a debtor in the hands of an assignee to pay creditors, or in case of an assignment of specific property for the same purpose. A judgment is equally conclusive in an action to set aside an instrument for fraud or in one to enforce it as valid.

2. EVIDENCE TO CONTROVERT JUDGMENT NOT ADMISSIBLE. P. conveyed an interest in certain property to L. in trust to pay his own debts, the residue after the death of his wife to go to his children. Two years after the date of the trust deed a creditor of P. obtained a judgment against him in an action by the judgment creditor against the trustee and the beneficiary of P. to charge such judgment on the trust fund. *Held*, that the judgment was competent and conclusive evidence of P.'s indebtedness and evidence could not be given on the trial to show that P. was not indebted to plaintiff at the date of the trust deed in the full amount of the judgment.

*Nicholas* v. *Lord*, 121 App. Div. 924, affirmed.

(Argued October 22, 1908; decided November 10, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered October 14, 1907, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Lucius H. Beers, S. Sidney Smith, Herbert C. Lakin* and *Elliott Smith* for appellants. The judgment was not binding on defendants. (*Duchess of Kingston's Case*, Smith's L. C. 1998; *Foster* v. *Earl of Derby*, 1 Ad. & El. 783; *Dull* v. *Blackman*, 169 U. S. 243; *Douglass* v. *Howland*, 24 Wend. 35; *Berdan* v. *Sedgwick*, 44 N. Y. 626; *Zoeller* v. *Riley*, 100 N. Y. 102.) These appellants should have been allowed to go behind the judgment of Nicholas against Purdy of 1894 and prove the actual amount due, if anything, from Purdy to Nicholas at the time the trust deed was executed, evidence as to which was ruled out. (*Campbell* v. *Consalus*, 25 N. Y. 613; *Campbell* v. *Butts*, 3 N. Y. 173; *Manny* v. *Harris*, 2 Johns. 24; *Young* v. *Rummell*, 2 Hill, 478; *Burdick* v. *Post*, 12 Barb. 168; *Doty* v. *Brown*, 4 N. Y. 71; *Stanish* v. *Parker*, 2 Pick. 20; *Van Slyck* v. *Newton*, 10 Hun, 554; *House* v. *Lockwood*, 137 N. Y. 259; *Van Gelder* v. *Van Gelder*, 81 N. Y. 625.)

*J. Hampden Dougherty* for respondent. The judgment of September 11, 1894, was properly received in evidence. It showed the exact amount of the debt owing to the plaintiff from the defendant Purdy on March 16, 1892, the date of the deed of trust. It is immaterial that the judgment was recovered after the delivery of the trust deed or that it was recovered upon default. It was competent because it was recovered upon an indebtedness which had accrued in its entirety before the delivery of the trust deed. (*Candee* v. *Lord*, 2 N. Y. 269; *Hutchinson* v. *Hagemeyer*, 4 App. Div. 52; *Burgess* v. *Simonson*, 45 N. Y. 225; *Gates* v. *Preston*, 41 N. Y. 113; *Brown* v. *Magor, etc.*, 66 N. Y. 390; *Blair* v. *Bartlett*, 75 N. Y. 150; *P. & S. R. R. Co.'s Appeal*, 3 Grant [Pa.], 68; *Jenness* v. *Berry*, 17 N. H. 549; *Ledoux* v. *Bank of America*, 24 App. Div. 123; *Pringle* v. *Woolworth*, 90 N. Y. 511; *Acker* v. *Leland*, 109 N. Y. 5.) So

far as the effect of such a judgment is concerned there is no difference between an assignment for the benefit of creditors and a deed of trust, the purpose of which is to pay creditors. (Chaplin on Trusts, §§ 763, 766; Fowler on Real Prop. 373.) The judgment of September 11, 1894, conclusively established the amount due from Purdy to plaintiff on March 16, 1892, when the trust was created. And the court properly found that amount to be on that date $13,937.63. (*Matter of Murray,* 6 Paige, 204; *Matter of Duncan,* 10 Daly, 95; *Matter of Shipman,* 61 How. Pr. 515; *Matter of Fay,* 6 Misc. Rep. 462; *Bryant* v. *Russell,* 23 Pick. 508; Perry on Trusts, § 600.)

VANN, J. By an instrument dated March 16th, 1892, reciting a nominal consideration only, August Belmont Purdy conveyed to Franklin B. Lord an interest in certain property, in trust, *first,* repeating the words of the grantor, " to pay any just debts which I may now owe." *Second,* after payment of such debts, to invest the residue and apply the income therefrom " to the use of my wife, Bertha G. Purdy, during her life," and, *third,* " upon her death to divide the property then held in trust by him under this assignment amongst my then surviving issue, in equal shares *per stirpes.*" The grantor conferred express power upon the trustee " with my consent and the consent of my said wife, to create a specific charge upon my interest under the will of the said Abby G. Spring, hereby transferred, in favor of any creditor to whom I may be now justly indebted, the amount of such indebtedness and the terms of settlement having been first adjusted and agreed upon between me and the creditor." At the date of said deed Bertha G. Purdy was the wife of the grantor, and the infant defendant, Bertha Purdy, was then and now is his sole issue. The property assigned, worth about $48,000, consisted of an undivided interest in a portion of the estate of Abby G. Spring, a grandaunt of Mr. Purdy, subject, however, to the life estate of his mother, who survived until 1904.

In July, 1894, George S. Nicholas, the plaintiff herein,

commenced an action against August Belmont Purdy to recover a large sum of money alleged to be due as upon an accounting in relation to a copartnership that had existed between them for many years prior to September 1st, 1888, when it was dissolved by an agreement which provided that the affairs of the firm should be liquidated by Mr. Nicholas. The liquidation was substantially completed in the fall of 1891. Mr. Purdy, who was the sole defendant in that action, did not appear therein, and on the 11th of September, 1894, the plaintiff recovered judgment against him for the sum of $16,562.64. An execution, issued thereon to the proper county, was returned wholly unsatisfied, and no part of the judgment has been paid except the sum of $89.66. None of the appellants had notice that said action had been brought until after the entry of judgment therein.

The action which resulted in the judgment now before the court for review, was brought by said Nicholas for an accounting by said Lord, as trustee, " to this plaintiff and to the other creditors, if any, of the said August Belmont Purdy, as to the money and property received by him under the said assignment, or deed of trust," and to require him to pay the claim of the plaintiff and that of " any other creditor, entitled to share under the said assignment," and for other relief. Neither the complaint as drawn nor the judgment as rendered attacked the deed of trust, but the plaintiff stood upon it as valid and sought relief under it according to its terms. The defendants who answered, among other defenses, denied that Mr. Purdy, who did not answer, owed any debt to Mr. Nicholas that was in existence at the date of the deed of trust.

Upon the trial it appeared that not until long after the recovery of the judgment of September 11th, 1894, did the trustee receive money enough from the trust property to pay the same, and that Mr. Nicholas did not know of the trust deed until after 1896 and prior to 1901. The trial judge found the facts in accordance with the general claim of the plaintiff and rendered judgment requiring the trustee to pay him the sum of $13,937.63, the amount found due at the date

of the assignment, with interest and costs. This was not the entire amount of the plaintiff's judgment against Purdy, but only the sum·shown by the findings of the referee, which appeared in the judgment roll, to have been due the plaintiff on the first of September, 1888, less the amount to which Purdy was entitled to credit, according to such findings, the interest to the date of the trust deed having been ·computed on both sums before the deduction ·was made.

The Appellate Division affirmed the judgment after so modifying it as to make it interlocutory, and directing ·a reference to ascertain the claims of other creditors, with appropriate instructions for the publication of a notice to present proofs. When the referee reported that there was no creditor other than the plaintiff entitled to share under the deed of trust, final judgment was rendered at Special Term, and from the judgment of the Appellate Division affirming the same, as well as from its interlocutory judgment, the defendants Franklin B. Lord, as trustee, Bertha G. Purdy and Bertha Purdy, by her guardian *ad litem*, appealed to this court.

The only evidence offered by the plaintiff to show that he was a creditor of Purdy at the date of the deed of trust was the judgment roll in the action of *Nicholas* v. *Purdy*, filed on the 11th of September, 1894, more than two years after that deed was executed and delivered. It was held by both courts below that in the absence of collusion or fraud, of which there was no proof, said judgment roll was not only competent, but conclusive evidence to establish the existence and amount of the alleged debt from Purdy to Nicholas at the date of the trust deed. By repeated objections and exceptions the point was raised that this general ruling, made in various forms during the trial, was erroneous, as well as the specific ruling which prevented the appellant from giving evidence tending to show that owing to certain credits or offsets that should have been made, Mr. Purdy did not owe Mr. Nicholas the amount claimed at the date of said deed.

The primary authority relied upon to justify this position, as appears from both opinions below, is the case of *Candee* v

*Lord* (2 N. Y. 269), which has been misread and misunderstood, owing doubtless to the head note, which is misleading.

In that case the plaintiff as a creditor of one Russell Lord, with judgment recovered in 1844 on a claim in existence prior to 1843, upon the return of an execution thereon unsatisfied, sought to set aside two judgments against said Lord recovered in 1843 and two sheriff's deeds of his property founded thereon, upon the ground that they were fraudulent and void. The defendants alleged in their respective answers as a defense to the bill that the plaintiff's judgment against Lord was obtained upon a forged indorsement of his name on a promissory note. After issue was joined by general replications according to the old chancery practice, a motion, made to have the question of fact tried by a jury, was denied by the vice chancellor. Upon appeal to the chancellor, the order was reversed and an issue awarded for trial by jury as to whether the indorsement upon which the plaintiff obtained his judgment was a forgery. An appeal was then taken to the original Court of Appeals, which simply dismissed the appeal, leaving the order of the chancellor to stand in full force. It is true that Judge Gardiner, who wrote the only opinion, argued elaborately in favor of the proposition that "a judgment obtained without fraud or collusion is conclusive evidence, in suits between creditors in relation to the property of the debtor, of the indebtedness of the latter and of the amount of such indebtedness." The head note of the reporter, purporting to give an abstract of the decision, is in the words quoted, so far as the point now under consideration is concerned. The last sentence of the opinion, however, is as follows: "A majority of the court are of opinion that the decision of the chancellor was upon a question of practice which is not a proper subject of review in this court, and for that reason the appeal should be dismissed." This is followed by the decision as made, "Appeal dismissed." The only point actually decided, therefore, was that the order of the chancellor was not appealable, for when the appeal is dismissed nothing else can be decided. It is dangerous to rely

on an opinion, even when published as the opinion of the court, without observing the votes of the judges, which are the primary evidence of what was decided.

If that case stood alone we might not feel at liberty to depart from the rule that a judgment, recovered against a grantor years after he parted with all his title, is not binding upon the grantee, who was neither a party nor privy thereto; but it does not stand alone. For nearly sixty years it has been treated by the courts as establishing the law as stated in the head note. It has been cited repeatedly by this court as authority for what Judge Gardiner wrote and Judge Comstock reported. (*Miller* v. *Lewis*, 4 N. Y. 554, 559; *Murray* v. *Judson*, 9 N. Y. 73, 74; *Bank of Poughkeepsie* v. *Hasbrouck*, 6 N. Y. 216, 223; *Curtis* v. *Leavitt*, 15 N. Y. 1, 51; *Hall* v. *Stryker*, 27 N. Y. 596, 603; *Pray* v. *Hegeman*, 98 N. Y. 351, 362; *Carpenter* v. *Osborn*, 102 N. Y. 552, 557; *Acker* v. *Leland*, 109 N. Y. 5, 16; *Brooks* v. *Wilson*, 125 N. Y. 256, 261.)

In *Hall* v. *Stryker*, Judge Denio, who was of counsel for the appellant in *Candee* v. *Lord*, speaking for the court after he had become its chief judge, said: " The specific objection that the purchaser has no day in court to controvert the creditor's debt, would apply with the same force where the seizure was under an execution issued on a judgment. In that case the judgment would be conclusive as to the judgment creditor's debt, though there, as in this case, the fraudulent grantees would have no opportunity to try the question of its existence. (*Candee* v. *Lord*, 2 N. Y. 269.) This was the unanimous opinion of the judges of this court in the case cited, though the judgment turned upon another point. The opinion of Judge Gardiner and the points presented by the appellant's counsel in that case fully explain the views upon that question which I now entertain."

In *Carpenter* v. *Osborn*, Chief Judge Ruger said: " The judgments rendered in these actions were, in the absence of proof of fraud in their procurement, conclusive evidence not only as against John Carpenter," the judgment debtor, " but

also as to all other persons of the several questions of fact and law material to the issues tried which were thereby determined."

*Carpenter* v. *Osborn* was cited as authority for the same proposition in *Decker* v. *Decker* (108 N. Y. 134).

In *Acker* v. *Leland* (109 N. Y. 5, 15) Judge Gray said: " A judgment is conclusive as between the parties upon the matters litigated and as to all matters which were or might have been set up by way of defense. It has been repeatedly held by this court that as to creditors a judgment must be deemed conclusive evidence as to the property of the debtor, the indebtedness and the amount of such indebtedness, if obtained without fraud or collusion."

In *Burgess* v. *Simonson* (45 N. Y. 225, 229) the court said: " The judgment recovered by the plaintiff against the grantor was conclusive evidence of his indebtedness in this action in the absence of any fraud, and, therefore, the evidence offered " in behalf of the heirs of the grantee " to controvert the existence of the debt was properly rejected."

In *Pringle* v. *Woolworth* (90 N. Y. 502, 511) Chief Judge Andrews, speaking for the court, wrote: " The case is analogous to that of a suit brought against a debtor for the recovery of a debt, after a general assignment of his property made to a trustee for the benefit of creditors. The contract between the debtor and creditor would still subsist, and could be enforced by suit against the debtor, and a judgment between the original parties on the contract would necessarily establish the existence and extent of the obligation between them, as well as against a trustee of his estate for the benefit of creditors. * * * And in this case the judgment against the company, established as against the receiver the amount of the debt or claim of the plaintiff upon the policy, and the receiver had no right to reagitate questions litigated in the action against the company, or to interpose any defense on the merits which might have been taken in the action in which the judgment was rendered. The receiver holds the property and estate of the corporation as the officer of the court, for the purpose of distribution under the direction of the court

among creditors and stockholders, and in the absence of fraud
or collusion, neither of which is alleged in respect to the
Pennsylvania judgment, the receiver and the other creditors
are bound thereby. If any reason existed to question the
judgment against the company, it was the duty of the receiver
to apply to the court rendering it, to reopen the judgment, and
to be permitted to defend. We are, therefore, of the opinion
that the exception taken by the defendant to the ruling that
the judgment conclusively established the amount of the debt,
cannot prevail." No authority was cited in *Burgess* v. *Simonson* or *Pringle* v. *Woolworth* in support of the doctrine thus
laid down.

The principal case or those which follow it have repeatedly
been made the basis of judgment by the Supreme Court, but
we cite only a few, including some which involved the
proposition as applied to voluntary assignments for the benefit
of creditors. (*Ludington's Petition*, 5 Abb. [N. C.] 307,
323 ; *Merchants' National Bank* v. *Hegemeyer*, 4 App. Div.
52, 57 ; *Ledoux* v. *Bank of America*, 24 App. Div. 123, 126 ;
*Matter of Roberts*, 98 App. Div. 155, 157.)

Thus, the opinion of Judge GARDINER, even if it did not
express the law when it was written, has now become the law
by adoption, and we cannot announce a different rule, for the
question is not an open one.

We see no difference, as to the effect of the judgment
between a general assignment of all the debtor's property to
pay creditors and an assignment of specific property for the
same purpose. In both cases the debtor sustains the same
relation to the assignee or trustee and is under the same obligation to creditors. In both, a trust is created, and there is
privity of contract as well as of estate between the creator of
the trust and the beneficiaries. In the one case, however, the
assignor is entitled to what is left after his debts and the
expenses of administration are paid, while in the other he has
no pecuniary interest in the residue, even when, as in the case
before us, he had transferred it to his nearest relatives. The
grantor, however, had an interest to protect against the

recovery of an unjust judgment, for if the property granted did not realize enough to pay his debts, his other property, whenever acquired, might be taken to pay them. In the deed of trust he expressly reserved the right to adjust "the amount of such indebtedness," under certain circumstances. He had something to lose if he neglected to defend against an unfounded claim.

Nor is there any difference in principle between an action to set aside an instrument for fraud and one to enforce it as valid, as to the conclusive effect of a subsequent judgment in establishing the debt. The nature of the fact to be proved is the same in both cases, that is, the existence of a valid debt and the amount thereof. It may be that the judgment requisite in the one case is not required in the other, but this does not lessen the binding effect of a judgment, when recovered, even if one was unnecessary. The judgment creditor is bound by the judgment as well as the judgment debtor and others, and he cannot increase his claim by evidence any more than they can diminish it.

As no other question requires discussion, constrained by the authorities cited, I advise that the judgments appealed from be affirmed, with costs.

CULLEN, Ch. J., GRAY, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Judgment affirmed.